## Case No. 14,798.

UNITED STATES v. CLAFLIN et al.

[13 Blatchf. 178.] [1]

Circuit Court, S. D. New York. Nov. 5, 1875.

INDICTMENT — DESCRIPTION — CERTAINTY — SMUGGLING.

1. Section 4 of the act of July 18th, 1866 (14 Stat. 179), reproduced in section 3082 of the Revised Statutes, provides, that, "if any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any merchandise, contrary to law, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment or sale of such merchandise, after importation, knowing the same to have been imported contrary to law," "the offender shall be fined," &c. An indictment founded on this section described the merchandise as "certain goods, wares and merchandise, to wit, a large quantity of silk goods, to wit, six cases containing silk goods, of the value of $30,000, a more particular description of which is to the jurors unknown," and stated that the goods were dutiable goods introduced into the port of New York from France: Held, that the indictment was not open to the objection, that the goods were not sufficiently identified, and the description of them not sufficient to enable the defendant to prepare his defence.

2. It is not necessary to describe property in an indictment with such particularity as will obviate all necessity for proof outside the record to support a plea of once in jeopardy.

3. A reasonable amount of detail in describing property is all that is necessary in an indictment, and, if more detail is required, a bill of particulars may be demanded.

4. An indictment under the said section need not set out the offence committed in the original importation, with the same particularity of time, place and circumstances that would be required in an indictment for the original offence.

5. Whether the said section applies to any other case than that of smuggled goods, quere.

6. The indictment having alleged that the illegality in the original importation of the goods was, that they had been "smuggled and clandestinely introduced into the United States," the charge must be confined to such illegality.

7. The averment that the goods were smuggled and clandestinely introduced into the port of New York from the republic of France is a sufficient averment to enable the court to say that the original importation was illegal, within the meaning of the statute.

8. The meaning of the word "smuggle," defined.

9. When technical words are used in an indictment, they must be taken to be intended to have their technical meaning.

10. In an indictment under the said 4th section of the act of 1866, it is not a sufficient designation of the illegality of the original importation, to say, merely, that the goods had been imported and brought into the United States contrary to law.

[This was an indictment against Horace B. Claflin and others, alleging the buying,

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

receiving, and concealing of goods illegally imported. Heard on motion to quash the indictment.]

Benjamin B. Foster. Asst. U. S. Dist. Atty. William M. Evarts. for defendants.

BENEDICT, District Judge. This cause comes before the court upon a motion to quash the indictment. The provision of law under which the defendants are charged, is section 4 of the act of July 18th, 1866 (14 Stat. 179). reproduced in section 3082 of the United States Revised Statutes. It is as follows: "If any person shall fraudulently or knowingly import or bring into the United States. or assist in so doing, any merchandise contrary to law, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment or sale of such merchandise, after importation, knowing the same to have been imported contrary to law," "the offender shall be fined, &c.," the offence being a misdemeanor. The indictment contains four counts. In the first the charge is that of concealing, in the second, that of facilitating the transportation, in the third, that of facilitating the sale, of certain merchandise. These three counts are similar in form, and the objections now to be considered apply to each of them. The fourth count is different, and will be considered by itself.

The first objection which I examine is, that the goods, forming the subject of the transaction charged, are not sufficiently identified. The language used to identify the goods is as follows: "Certain goods, wares and merchandise, to wit, a large quantity of silk goods. to wit, six cases containing silk goods, of the value of $30,000, a more particular description of which is to the jurors unknown." There is also the additional statement that the goods were dutiable goods introduced into the port of New York from France. The rules by which the sufficiency of an indictment is to be determined have been too often stated to require repetition. These rules, as they have been understood and applied in the adjudged cases, are to be applied here. Their operation cannot be extended because of any embarrassment under which these defendants lie, because of the great extent of their business, and the large number of transactions, similar in character, which their dealings involve. Judged thus, the description under consideration will be found sufficient. Plainly, the language used shows the subject of the transaction to be within the scope of the statute creating the offence, for the statute in terms includes all kinds of merchandise. It is also clear, that the description in the indictment, together with such evidence as a trial must necessarily furnish, will fully protect in any future prosecution for the same offence. It is not necessary to describe property with such particularity as will obviate all necessity for proof outside the record to support a plea of once in jeopardy. Says the court, in Reg. v. Mansfield, 1 Car. & M. 140: "There must be some parol evidence in all cases, to show what it was that he was tried for before." The requisite notice of the offence charged is also to be found in the language used. The rule requiring notice of the offence charged is never so applied as to compel a description calculated to be fatal to the prosecution. A reasonable amount of detail in description is all that can be demanded for the purpose of informing the defendant. If, in any case, such reasonable detail prove insufficient to enable the defendant to prepare his defence, all possibility of injustice is removed by a bill of particulars, to which the defendant is entitled upon making oath that further particulars are necessary to enable him to defend. While speaking of a bill of particulars, it may be remarked, that the objections to a bill of particulars in a criminal case, because it cannot be certainly known that the bill of particulars describes the goods to which the attention of the grand jury was drawn, is an obvious one. and has been often urged, but has not been deemed of sufficient practical importance to overcome the advantages, both to the defendant and the prosecution, which follow from the practice. I have never heard a motive suggested as calculated to induce a public prosecutor to omit the presentation to the consideration of the grand jury of the goods that he must prove before the petit jury in support of the indictment which the grand jury find: and it cannot be presumed that the official representative of the United States. when called on to furnish a more detailed description of the goods presented by him to the consideration of the grand jury, would place on file a description of other goods. Experience has shown that the opposite presumption is sufficient to prevent injustice. and the practice seems established by the authorities. The description under consideration is not so deficient in detail as to be fatal to the indictment. It states that the articles bought were cases containing silk goods imported from France. It is true, that no numbers or marks are given: but marks and numbers may have been absent from the cases, and that for the purposes of concealment. The voyage of importation is not given, nor the name of the ship, nor that of the consignee: but such particulars are not necessarily disclosed by the cases of the goods, and are often wholly unknown: and. to require the various species of silk goods in the cases to be set forth, would open too wide the door for the defeat of the prosecution upon a question of variance. To demand the statement in the indictment of such particulars of description is to push the rule beyond reason. Furthermore, the grand jury have stated, in the indictment, that a more particular description is unknown to them.

That I do not go beyond the bounds of precedent in holding this description to be sufficient for the purpose of identifying the goods and enabling the defendants to prepare a defence. is made apparent by referring to some of the descriptions which adjudged cases show to have been approved. The words "one sheep" do not go far towards enabling an extensive grazier to prepare a defence. Such charges as "ten domestic fowls." "woolen cloth," "hay," "twenty-two pounds' weight of tin." "certain goods," "one post letter, the property of the postmaster general." "one leg of mutton." "one book of the value of $3." "divers goods," will all be found to have been considered sufficient to identify the subject of the charge in an indictment.

I pass, therefore, to consider the next objection—that the illegality in the importation of these cases is not properly stated. In support of this objection. the proposition is advanced, that an indictment for buying goods which have been brought into the United States contrary to law must set out the offence committed in the original importation, with the same particularity of time. place, and circumstances that would be required in an indictment for the original offence. Such a proposition cannot be maintained. The offence of knowingly buying smuggled goods is similar in character to that of receiving stolen goods, so much so that it has been conceded that the rule applied to indictments for receiving stolen goods may be properly applied to this indictment. The concession is fatal to the objection under consideration. The rule applying to indictments for receiving stolen goods is thus given by Roscoe: "It is not necessary to state in the indictment the name of the principal felon. and the usual practice is merely to state the goods to have been before. then feloniously stolen." Rosc. Cr. Ev. 885. See. also. 2 Whart. Cr. Ev. §§ 1899, 1900. Archbold gives the form thus: "One silver tankard. goods and chattels of J. N., before then feloniously stolen." In Rex v. Jervis, 6 Car. & P. 156, it was expressly adjudged unnecessary to say by whom the principal offence had been committed. The same rule has been applied in cases of other offences than that of receiving stolen goods. Thus. in a prosecution under the English statute which makes it an offence to "receive any post letter, * * * the stealing, or taking, or embezzling, or secreting whereof shall amount to a felony under the post office act. knowing the same to have been stolen, taken, embezzled, or secreted." the indictment, as given by Archbold (Archb. Cr. Pl. 441) charges, that "one post letter, the property of the postmaster general. before then from and out of a certain post-letter bag feloniously stolen. J. S. feloniously did receive and have, knowing," &c. So, under 16 & 17 Victoria, where the offence is being in company with more than four others. "with any goods liable to forfeiture under this or any act relating to the customs." the indictment, as given by Archbold (Id. 869)

charges that J. S., "being then in company with divers persons to the jurors unknown, to the number of five or more, was found feloniously with certain goods then liable to forfeiture under and by virtue of a certain act, to wit, an act," &c.

I next consider the position taken in support of this motion, that the indictment. to be good. should not only confine the charge to the dealing in smuggled goods. that is, goods secretly run into the United States without passing through the custom house, but also should state facts from which the court can determine such to have been the character of the importation referred to. It seems unnecessary to determine, in this case. whether section 4 of the act of 1866 can be applied in any case other than that of smuggled goods. for, whether the general words of the act are intended to cover other cases or not, this indictment is confined to such a case. Here, the pleader having, by the use of the words of the act, brought the charge within the scope of the statute, has proceeded to limit the charge to a dealing in smuggled goods. The illegality of the original importation is, in express terms. stated to consist in this. that said goods have been smuggled and clandestinely introduced into the United States. The case of U. S. v. Thomas [Case No. 16,473] is authority to show that the effect of adding such words to the words of the act is to confine the charge to the illegality thus described. Thus the indictment itself furnishes an answer to the first branch of the objection under consideration: and this language of the indictment has been here relied on by the prosecution as answering the argument made to show that section 4 of the act of 1866 is confined to cases of smuggled goods.

The second branch of the objection in hand is, that averring the goods to have been smuggled and clandestinely introduced into the port of New York from the republic of France, is not giving such a statement as enables the court to say that the original importation was illegal, within the meaning of the act of 1866. But. as already shown, the particularity of the statement respecting the act of importation required in charging the smuggler. is not required in charging the buyer of smuggled goods. In the case of the buyer, the act to be proved is the buying of certain goods, and the guilty knowledge which makes the act criminal is knowing the goods to have been smuggled. Here, the act of the defendant intended to be proved is stated with particularity of time. place, and subject-matter, and the guilty knowledge required by the act is shown by the averment that the defendants knew the goods to have been imported contrary to law. as aforesaid, that is to say, in this, that they had been smuggled into the United States.

The word "smuggle" is a technical word, having a known and accepted meaning—"a necessary meaning in a bad sense." It implies something illegal, and is inconsistent

with an innocent intent. The idea conveyed by it is that of a secret introduction of goods with intent to avoid payment of duty. As such it is used by itself alone, and in the statutes even. It is used in section 4596 of the Revised Statutes, in a provision relating to seamen, where an "act of smuggling" plainly is supposed to mean such an act as above described, and none other. The word is used in the same technical manner in the English statute (16 & 17 Vict. c. 107, § 244), where it is deemed sufficiently descriptive of a particular illegal employment in a ship, to designate it as "a smuggling ship." This technical meaning of the word has taken the form of a statutory definition in the moiety act of June 22d, 1874 (18 Stat. 186), where it is declared, that the act of "smuggling shall be construed to mean the act, with intent to defraud, of bringing into the United States, or, with like intent, attempting to bring into the United States, dutiable articles, without passing the same, or the package containing the same, through the custom house, or submitting them to the officers of the revenue for examination." What is smuggling for the informer when he claims his reward must also be smuggling for the goods as to which he informs.

But, it is asked here, and the question is one which can be asked with equal significance in many cases—How does it appear that the goods which the grand jury have designated as smuggled are smuggled goods, within the legal acceptation of the word? The answer is, that, when technical words are used in an indictment, they must be taken to be intended to have their technical meaning. In an indictment for uttering counterfeit money, it is sufficient to say that the defendant "uttered" the money, without stating the circumstances which are supposed to amount to an uttering. Under the statute making it an offence "to impair the queen's current coin," it is sufficient to use the words "did impair;" and, under another statute, to say, "did deface." Archb. Cr. Pl. 748, 749. Where the act reads, "shall import or receive into the United Kingdom counterfeit coin," it is sufficient to say, "did import from beyond the seas." Id. 751. The present indictment is within the principle of these precedents.

The real difficulty of the defendants does not lie in the form or the matter of the indictment, but in the fact that the charge made does not conform to the proofs which they suppose the government to have, and, upon the argument, this was put forth as matter of complaint, and the district attorney was challenged to admit that none of the goods referred to in the indictment were smuggled goods; but, it cannot in this way be made to appear that the indictment is bad. Nor is a motion like the present adapted to secure relief from such a difficulty.

I have now considered the objections urged against the first three counts of the indictment. It remains to consider the fourth and last count. This count is likewise based upon section 4 of the act of 1866. The difference between it and the other counts is, that, in assigning the illegality of the original importation, it uses simply the words of the statute, averring only that the goods had been imported and brought into the United States contrary to law. If the act of 1866 is confined in operation to a single form of illegality, it might be questioned whether a count like this, in an indictment for a secondary offence, would not be supported by the authorities already referred to; and, certainly, there is weight in the argument derived from the repealed provisions of section 16 of the act of 1842 [5 Stat. 563], the provision of the moiety act of 1874, and the general features of the revenue laws, to show that illegalities and frauds committed in regard to the value, description, invoice and ascertainment of the amount of duties to be paid upon goods which come into the custody and under the supervision and scrutiny of the officers of the customs, are excluded from the operation of the act of 1866. But, there are other forms of illegality, as, for instance, the introduction of prohibited goods, where the intent to avoid payment of duties does not exist, the introduction of goods packed in prohibited methods, and the like, which do not appear to be so excluded. and, if several forms of illegality are intended to be covered by the words of the act, it would seem that the illegality should be designated with more particularity than is afforded by the words "imported contrary to law." When the language of a statute comprehends, under general terms, divers forms of illegality, having different characteristics, it may well be considered proper to require something more than the words of the act. In cases of receivers, it is usual to state whether the goods received were goods stolen or goods obtained by false pretence. For this reason, and because such a count, based upon this same statute, has been condemned in a reported case in this circuit—the Case of Thomas, above referred to—I am of the opinion that the fourth count of this indictment should be rejected.

My determination upon this motion, therefore, is, that the fourth count of the indictment be quashed, and that, as to the other counts, the motion be denied.

[For an action of debt against same defendants, see Case No. 14,799.]