**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Sam B. HAYNES, Defendant-Appellant.**

No. 77–5382.

United States Court of Appeals, Fifth Circuit.

May 18, 1978.

Samuel B. Paternostro, Kerry P. Fitzgerald, Dallas, Tex., for defendant-appellant.

Kenneth J. Mighell, U. S. Atty., Fort Worth, Tex., Shirley Baccus-Lobel, Harry Koch, Asst. U. S. Attys., Dallas, Tex., for plaintiff-appellee.

Before WISDOM, THORNBERRY, and RUBIN, Circuit Judges.

THORNBERRY, Circuit Judge:

It is particularly appropriate that this case was argued before the Court during the height of the federal income tax "season," since it involves fraud by a tax preparer, "whose Twentieth Century occupation is now almost indispensable to all save those taxpayers who can use, or risk the use of, a short form with standard deductions." *United States v. Brown,* 548 F.2d 1194, 1196 (5 Cir. 1977). The widespread use of tax preparers has caused serious problems, and the Internal Revenue Service has taken steps through its "Tax Preparers' Program" to locate dishonest or incompetent tax preparers. *See Anderson v. United States,* 548 F.2d 249 (8 Cir.), *cert. denied,* 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977).

Appellant Sam B. Haynes challenges his conviction, in a jury trial, on seven counts of knowingly and willfully assisting in the preparation of false or fraudulent income tax returns in violation of 26 U.S.C. § 7206(2).[1] He received a total of five years imprisonment, five years probation, and a $1000 fine. A condition of probation is that Haynes, who has previously been convicted of similar tax offenses, "NEVER, NEVER, NEVER deal with income tax returns again." Record at 81 (emphasis in original).

Three issues are raised on appeal: (1) whether the trial judge improperly commented on Haynes' failure to testify on his own behalf; (2) whether the question of a

---

1. This section provides:

   § 7206. Fraud and false statements. Any person who—

   \*   \*   \*   \*   \*   \*

   (2) . . . [w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document . . .

   \*   \*   \*   \*   \*   \*

   shall be guilty of a felony . . . .

tax return's being false or fraudulent as to a "material matter" is a question of law; and (3) whether the trial judge improperly allowed the indictment to be taken to the jury room during deliberations. For the reasons stated below, we affirm.

Haynes was originally indicted on 18 counts of § 7206(2) violations. He was arraigned on 10 counts, and only seven went to the jury. Those seven counts involved the tax returns of four individuals and two married couples, who paid Haynes fees ranging from $5 to $15.50 for his services. All returns were for tax years 1971–73.

The taxpayers testified that Haynes, who operated an income tax service in Dallas, simply manufactured various deductions to which they were not entitled. For example, one taxpayer's tax return reflected a $580 deduction for medical insurance, although the taxpayer paid nothing for any such insurance during that particular year and did not tell Haynes otherwise. And, despite the fact that another taxpayer was not in business for himself, his tax return listed approximately $2500 in business deductions. In other cases, the taxpayers said, Haynes substantially inflated figures for otherwise legitimate deductions. For instance, one taxpayer told Haynes that he had given $150 to his church, but the return included a $300 deduction for charitable contributions. Similarly, another taxpayer provided Haynes a receipt for interest payments on a credit card account for $40.34, while the return claimed $443.00.

Defense witnesses testified that Haynes suffered from poor eyesight and that he had prepared several hundred tax returns during the relevant time period. They also told of their negotiations and dealings with Haynes in the preparation of tax returns, and a tax expert testified as to the propriety of certain deductions for business expenses.

During cross-examination of one of the taxpayers who testified on behalf of the government, defense counsel repeatedly attempted to determine whether the witness had expenses for medical insurance other than those he had mentioned on direct examination. Counsel was trying to account for the amount claimed on the tax return prepared by Haynes, which was considerably greater than the amount the taxpayer had actually paid. The court told counsel several times that this information was immaterial unless he demonstrated that it had been conveyed to Haynes. When counsel continued this line of questioning in regard to a credit life insurance policy, contending that a portion of the premium might cover medical expenses, the following exchange took place:

COURT: You know that he has got to tell Mr. Haynes in order for it to be considered.

COUNSEL: Judge, I contend that if I can show where this figure came from, Mr. Haynes did not make it up.

COURT: Even if he did tell Mr. Haynes it still is not admissible [because counsel had not proved that part of the credit life insurance premium covered medical expenses].

COUNSEL: Judge, if I can show that is the correct figure what I am trying to tell the Court. Whether he told Mr. Haynes or Mr. Haynes got it from some other source, Your Honor, is what I am trying to say.

COURT: Well, as far as he is concerned you can only consider what he told Mr. Haynes. If you want to put Mr. Haynes on the stand, that is a different matter.

Transcript at 200–01. Cross-examination of the witness continued, and at its completion court was recessed for the day. The next morning defense counsel objected that the Court had made "a direct comment on whether or not the defendant would take the stand in this case" and asked for an instruction for the jury to disregard the remark. The Court agreed, but denied counsel's motion for a mistrial on the ground that the error was incurable. The Court then instructed the jury to disregard the comment, and in the final jury instructions stated that a criminal defendant "is never under any duty or obligation to testify on his own behalf and no inference of guilt can be made from his decision not to testify."

Just as it is improper for a prosecutor to comment on a defendant's silence, it is improper for a trial judge to call attention to such a failure to testify. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Davis v. United States,* 357 F.2d 438 (5 Cir.), *cert. denied,* 385 U.S. 927, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966). However, not all comment is improper. For example, the Supreme Court recently held that a trial judge's giving of an instruction, over the defendant's objection, that the jury must draw no adverse inferences from the defendant's failure to testify did not violate the privilege against compulsory self-incrimination. *Lakeside v. Oregon,* —— U.S. ——, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978). Moreover, our cases emphasize that the facts and circumstances of each case must be analyzed to determine whether the language was "manifestly intended" as a comment on the accused's failure to testify or that the remark was "of such character that the jury would naturally and necessarily take it" as such. *Davis v. United States, supra; United States v. Rochan,* 563 F.2d 1246 (5 Cir. 1977); *United States v. Dearden,* 546 F.2d 622 (5 Cir. 1977); *United States v. Trevino,* 565 F.2d 1317 (5 Cir. 1978). Therefore, we must carefully examine the context in which the comment was made.

■ At first blush, this case seems close to *Davis.* In both cases the trial judge, during cross-examination of a government witness, commented that defense counsel could overcome some evidentiary problems by putting the defendant on the stand. However, there are critical differences that must lead to a different result in the instant case. First, the trial judge in *Davis* said several times that the defense could "have your people . . . testify if you want them to" and "[b]ring them up here

and put them under oath." 357 F.2d at 440–41 n.5. In the instant case, however, the trial judge made only a single simple statement in the context of an evidentiary ruling necessitated by defense counsel's pursuing an irrelevant matter.[2] Second, the trial judge in the instant case told the jury to disregard the remark as soon as she was requested to do so by defense counsel, and she also gave a detailed instruction on this point in the general charge to the jury. There is no indication that such corrective measures were taken in *Davis.*

Moreover, in *United States v. Rochan, supra,* the court held that a trial judge lacked the requisite "manifest intention" when he inadvertently commented about "the only thing we have heard from the defense" in making an evidentiary ruling. The same is true in the case at bar, and it is clear that the trial judge's comments in *Davis* went well beyond the remarks made here or in *Rochan.* Moreover, the context in which the statement was made precludes our labeling it a remark that the jury would "naturally and necessarily" interpret as a comment on the accused's exercise of his fifth amendment privilege. Moreover, we cannot ignore the impact of the trial judge's cautionary instructions to the jury. *See Lakeside v. Oregon, supra.* Considering these circumstances, we conclude that no prejudice flowed to Haynes. *See United States v. Cerullo,* 435 F.2d 142 (5 Cir. 1970); *United States v. Goodwin,* 470 F.2d 893 (5 Cir. 1972), *cert. denied,* 411 U.S. 969, 93 S.Ct. 2160, 36 L.Ed.2d 691 (1973); *United States v. Wilson,* 500 F.2d 715 (5 Cir. 1974), *cert. denied,* 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975). Even if the comment were error, it was clearly harmless beyond a reasonable doubt, especially in light of the overwhelming evidence of Haynes' guilt. *See United States v. Bynum,* 566 F.2d 914 (5 Cir. 1978).

**2.** The fact that Haynes had not yet had the opportunity to testify when the remark was made does not, of course, mean that there was no comment on his failure to take the stand. *Davis* makes this clear. However, the fact that the comment came during the government's case-in-chief is useful in terms of context. The judge's remark was a response to defense counsel's argument that Haynes had learned of certain medical insurance expenses from a source other than the taxpayer. The judge's remark dealt with establishing the existence of that particular source, and at that point in the trial it could logically be assumed that Haynes would testify.

To establish a violation of § 7206(2), the government must prove, inter alia, that the defendant aided and/or assisted in the procuring, counselling, or advising in the preparation of an income tax return that is false or fraudulent as to a material matter. Haynes contends that the trial court erroneously decided the question of materiality as one of law and that the issue should have been submitted to the jury.

In the analogous context of perjury offenses, this court has held that materiality is a question of law to be decided by the court. *E. g., United States v. Brumley,* 560 F.2d 1268 (5 Cir. 1977) (18 U.S.C. § 1622, subornation of perjury; 18 U.S.C. § 1001, false writing or document with respect to any matter within any department or agency of the United States); *United States v. Damato,* 554 F.2d 1371 (5 Cir. 1977) (18 U.S.C. § 1623(a), false declaration before court or grand jury); *United States v. Edmondson,* 410 F.2d 670 (5 Cir.), *cert. denied,* 396 U.S. 966, 90 S.Ct. 444, 24 L.Ed.2d 430 (1969) (18 U.S.C. § 1621, perjury in any instance in which federal law requires an oath to be administered). *See also Sinclair v. United States,* 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692 (1929).

Moreover, in prosecutions under 26 U.S.C. § 7206(1),[3] we have indicated that materiality is a question of law for the court. *Hoover v. United States,* 358 F.2d 87 (5 Cir.), *cert. denied,* 385 U.S. 822, 87 S.Ct. 50, 17 L.Ed.2d 59 (1966). *See also United States v. Romanow,* 509 F.2d 26 (1 Cir. 1975).[4] There is no doubt that § 7206(1) and § 7206(2) are closely related companion provisions. The former, specifically a perjury statute,[5] makes clear that any person who makes a knowingly false statement on any return is criminally liable. The latter does not refer to perjury but makes willful assistance in preparing a false return an offense. Significantly, this court has rejected the argument that a tax preparer cannot be prosecuted under § 7206(1) but must be pursued under § 7206(2). *United States v. Miller,* 491 F.2d 638 (5 Cir.), *cert. denied,* 419 U.S. 970, 95 S.Ct. 236, 42 L.Ed.2d 186 (1974). Thus, the same set of facts may give rise to prosecution under either § 7206(1) or § 7206(2). *See, e. g., United States v. Jernigan,* 411 F.2d 471 (5 Cir.), *cert. denied,* 396 U.S. 927, 90 S.Ct. 262, 24 L.Ed.2d 225 (1969) (preparer of corporate income tax return prosecuted under § 7206(1)); *Baker v. United States,* 131 U.S.App.D.C. 7, 401 F.2d 958 (1968) (taxpayer prosecuted under § 7206(2) for assisting another to falsify his own tax return); *Hedrick v. United States,* 357 F.2d 121 (10 Cir. 1966) (CPA and his employer jointly indicted under § 7206(2)).

Accordingly, we hold that the materiality question under § 7206(2) should be treated no differently than the same issue under § 7206(1) and other federal perjury statutes. That is, materiality is a question of law to be decided by the court. We point out that the jury still must decide the ultimate issue of whether the returns had been willfully falsified, and this issue is generally the focal point of § 7206 cases. *See United States v. Pomponio,* 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976); *United States v. Bishop,* 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973); *United States v. Brown, supra.* In the instant case, the jury had to find that Haynes had willfully inflated legitimate deductions or manufactured nonexistent deductions in order to find him

---

3. This section provides:

> § 7206. *Fraud and false statements.* Any person who—
> (1) . . . [w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . .
>  \* \* \* \* \* \*
> shall be guilty of a felony . . . ..

4. Arguably *contra* is *United States v. Null,* 415 F.2d 1178 (4 Cir. 1969). However, a careful reading of the case indicates that the Court did not address the question of whether materiality is a question of law, but rather considered only whether the jury should have been permitted to determine if certain items omitted from defendant's tax return were *de minimis. Id.* at 1181.

5. *See United States v. Levy,* 533 F.2d 969 (5 Cir. 1976).

guilty. *See United States v. Warden,* 545 F.2d 32 (7 Cir. 1976). Thus, the trial judge in the instant case correctly concluded that the materiality question was one of law for the court to decide.

Finally, Haynes argues that the trial court abused its discretion in permitting the jury to have a copy of the 18-count indictment during its deliberations, since only seven counts were submitted to the jury.

It is unclear from the record before us that the jury was actually given the entire 18-count indictment. Each count was set out in a separate page, and the trial judge could well have provided the jury only the pages pertinent to the seven counts. That inference can certainly be drawn from the court's instructions to the jury, although the opposite inference can also be drawn.[6] Moreover, defense counsel did not make a specific objection in the trial court. The objection, set out in the margin,[7] would cover not only the error complained of on appeal but also the situation in which the jury received only the seven counts.

It is a cardinal rule that an objection must be framed with precision sufficient to inform the trial judge as to the matter about which the objection is raised and the grounds therefor. Rule 51, Fed.R.Crim.P., requires that a party make known to the court "his objection to the action of the court and the grounds therefor." When an objection is so general "as not to indicate the specific grounds upon which it is made, it is unavailing on appeal, unless it be of such character that it could not have been obviated at the trial." *Noonan v. Caledonia Gold Mining Co.,* 121 U.S. 393, 400, 7 S.Ct. 911, 915, 30 L.Ed. 1061 (1887); *see also United States v. Garcia,* 531 F.2d 1303 (5 Cir.), *cert. denied,* 429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976); *United States v. Hyde,* 448 F.2d 815 (5 Cir. 1971), *cert. denied,* 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745 (1972); *United States v. Jackson,* 451 F.2d 259 (5 Cir. 1971). Thus, in this case our review is limited to plain error. Rule 52(b), Fed.R.Crim.P.[8]

However, the government urges that even plain error review is unnecessary because the record does not support Haynes' contention that the entire indictment was before the jury. *See, e. g., United States v. Dunham Concrete Products, Inc.,* 475 F.2d 1241, 1251 (5 Cir.), *cert. denied,* 414 U.S. 832, 94 S.Ct. 65, 38 L.Ed.2d 66 (1973). The record is ambiguous at best, and we are not willing to adopt a "presumption of irregularity" in cases such as this. However, even assuming that the jury did receive the complete indictment, we find no plain error.

The trial court has discretion to permit the jury to have a copy of the indictment during its deliberations. *United States v. Vicars,* 467 F.2d 452 (5 Cir. 1972), *cert. denied,* 410 U.S. 967, 93 S.Ct. 1451, 35

**6.** The court charged the jury:
Paragraph 1 of the indictment sets forth the general allegations of the alleged illegal conduct of the defendant applicable to each of the 7 counts which you are to consider. The specific details of each count are set forth on the following pages of the indictment.
Record at 64–65. However, the court also charged the jury that although the indictment contained 18 counts, "[s]ome of the counts are not before you and are not to be considered by you" and that the jury was to consider "only the charges in the 7 counts—that is, Counts 1–4, 10, 15, and 17." Record at 64. This statement suggests that the jury received all 18 counts but can also be read as merely explaining to the jury why they received copies of only seven counts that were not numbered sequentially.

**7.** "We object to the jury getting the indictment in this cause as the indictment was not admit-ted into evidence and it allows the jury to speculate and reinforce the charges of the Government." Tr. at 504.

**8.** Moreover, a party cannot object on one ground in the trial court and then urge on appeal that the objection should have been sustained on another ground. *See United States v. Hicks,* 524 F.2d 1001 (5 Cir. 1975), *cert. denied,* 425 U.S. 953, 96 S.Ct. 1729, 48 L.Ed.2d 197 (1976). Here, Haynes appears to have objected at trial to any portion of the indictment going to the jury, yet on appeal he urges that allowing the jury to have the complete indictment was error. The imprecision of the objection rendered it improper under Rule 51 and also created problems in that an alternative ground is arguably being asserted on appeal. *See United States v. Garcia, supra.*

L.Ed.2d 702 (1973); *United States v. Frick,* 490 F.2d 666 (5 Cir. 1973), *cert. denied,* 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974); *United States v. Tucker,* 526 F.2d 279 (5 Cir.), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1738, 48 L.Ed.2d 203 (1976). The jury was properly instructed that the indictment itself did not constitute evidence,[9] and the indictment contains no inflammatory or perjorative language that would create any prejudice against the accused.[10] *Compare Getchell v. United States,* 282 F.2d 681, 689–90 (5 Cir. 1960); *see also United States v. Shafer,* 455 F.2d 1167 (5 Cir. 1972).

Moreover, in closing argument defense counsel made reference to the 18-count indictment in an apparent effort to bolster his theory that Haynes had simply made honest mistakes in preparing the tax returns on which the seven counts were based. Transcript at 486. The government successfully objected on the ground that only seven counts were at issue. Defense counsel obviously attempted to use the 18 counts in a favorable manner at trial, and we are at a loss to see how the complete indictment assumed prejudicial characteristics in the brief period between closing argument and jury deliberations. In addition, the trial court carefully instructed the jury that only seven counts were involved and

that the other counts were not to be considered. *See* footnote 6, *supra.* If the trial court did in fact provide the jury with a copy of the entire indictment, the court did not abuse its discretion in doing so and Haynes was not prejudiced thereby.

The judgment is AFFIRMED.

**9.** "An indictment is but a formal method of accusing a defendant of a crime. It is not evidence of any kind against the accused and does not create any presumption or permit any inference of guilt." Record at 72.

**10.** The opening paragraph of the indictment reads as follows:

[The grand jury charges that] on or about the dates hereinafter specified, in the Northern District of Texas, SAM B. HAYNES, a resident of Dallas, Texas, hereinafter called the defendant, did wilfully and knowingly aid and assist in, and counsel, procure and advise the preparation and presentation to the Internal Revenue Service, of United States Individual Income Tax Returns, Forms 1040, for the taxpayers and calendar years hereinafter specified, which were fraudulent and false as to material matters, in that they represented that the said taxpayers were entitled under the provisions of the Internal Revenue Laws to claim deductions and exemptions for items hereinafter specified, whereas, as the defendant then and there well knew and believed, the said taxpayers

were not entitled to claim deductions and exemptions in said amounts, but of lesser amounts as hereinafter specified.

Each count was then set out on a separate page in tabular form. Count I is reproduced below as an example.

COUNT I

Date of Offense: April 9, 1974
Taxpayer: Lucille Corsey
Calendar Tax Year: 1973

| Description | Total Amount Claimed | Amount Falsely Claimed | True & Correct Amount |
|---|---|---|---|
| Depreciation | $1,500.00 | $1,500.00 | $ – 0 – |
| Rent | 600.00 | 600.00 | – 0 – |
| Salaries | 800.00 | 800.00 | – 0 – |
| Insurance | 240.00 | 240.00 | – 0 – |
| Interest | 144.00 | 144.00 | – 0 – |
| Tires & Battery | 10.00 | 10.00 | – 0 – |
| Gas & Oil | 810.00 | 810.00 | – 0 – |
| Equipment | 1,316.00 | 1,316.00 | – 0 – |
| Supplies | 1,500.00 | 1,500.00 | – 0 – |

A violation of Section 7206(2), Internal Revenue Code; Title 26, United States Code, Section 7206(2).